IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AMY MURPHY,                                )
                                           )
            Plaintiff,                     )
                                           )
       v.                                  )    1:17CV1099
                                           )
NANCY A. BERRYHILL,                        )
Acting Commissioner of Social Security,    )
                                           )
            Defendant.                     )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Amy Murphy ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on August 14, 2013, alleging a disability onset date of January 30, 2013 in both applications. (Tr. at 21, 230-32.)[1] Her applications were denied initially (Tr. at 76-103, 140-51) and upon reconsideration (Tr. at 104-35, 156-73). Thereafter, Plaintiff requested an administrative hearing de novo before an

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

Administrative Law Judge ("ALJ"). (Tr. at 174-77.) On November 15, 2016, Plaintiff, along with her attorney, attended the subsequent hearing, during which an impartial vocational expert testified by telephone. (Tr. at 21.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 31), and, on October 23, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

2

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 23.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease with post laminectomy syndrome, degenerative joint disease, obesity, [and] depression[.]

(Id.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 24-25.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform sedentary work with further limitations. Specifically, the ALJ found that Plaintiff

> can lift and carry up to 10 lbs. She can stand and walk up to 2 hours and can sit for up to six hours but would require a sit stand option at will while remaining on task and would require the assistance of a hand held device while ambulating. She could only occasionally reach overhead but could frequently reach in all other directions and frequently handle, finger and feel. [Plaintiff] could never climb ladders, rope or scaffolds [or] crawl, and could have no concentrated exposure to workplace hazards. She could occasionally use ramps and stairs, balance, stoop, kneel and crouch. [Plaintiff] could only occasionally use a motor vehicle. She would be limited to simple, routine tasks.

5

(Tr. at 25.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not perform any of her past relevant work. (Tr. at 30.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 30-31.)

Plaintiff now raises two challenges to the ALJ's RFC determination. First, she contends the ALJ failed to properly weigh the opinion of Dr. David Jones, Plaintiff's treating neurosurgeon. As part of this argument, Plaintiff also contends that the ALJ failed to fully account for her need for a handheld assistive device. In her second, related claim, Plaintiff asserts that the ALJ failed to properly evaluate her subjective symptoms in accordance with Social Security Ruling ("SSR") 16-3p. After a thorough review of the record, the Court finds that neither of these contentions require remand.

A.  Use of Handheld Assistive Device

In her brief, Plaintiff contends that her "ability to work is also limited due to her reliance on a handheld assistive device for balance in addition to ambulation." ((Pl.'s Br. [Doc. #13] at 9, 12.) With respect to the use of an assistive device, the RFC adopted by the ALJ specifically found that Plaintiff "would require the assistance of a hand held device while ambulating." (Tr. at 25.) However, Plaintiff contends that she requires an assistive device not just for ambulating, but also for balance when standing. Plaintiff notes that at the hearing, the vocational expert testified if Plaintiff required an assistive device for standing, this would prevent Plaintiff from performing work tasks when standing and therefore would cause her to be off task more than allowed for sedentary work. (Tr. at 69-70.) However, the ALJ did

6

not adopt that restriction, and no testimony or other evidence supports Plaintiff's current assertion that she required continuous use of a walker or other assistive device to maintain her balance while standing. Plaintiff points to no medical evidence, treatment notes or opinions reflecting such a limitation. At the hearing, the ALJ noted that Plaintiff did not have a walker or cane with her. (Tr. at 58.) The ALJ nevertheless included in Plaintiff's RFC a limitation for use of an assistive device while ambulating, based on Plaintiff's testimony.

In support of her contention that she also requires the assistive device for balance while standing, Plaintiff points only to her own testimony. However, the testimony that Plaintiff highlights instead indicates that (1) she needs a walker to change to a standing position when she gets out of bed in the morning, and that (2) because of her right hip problems, she requires a walker "to walk a long ways" in order to prevent falls. (Tr. at 26, 58.) The ALJ specifically considered this evidence and noted that Plaintiff testified that she "has trouble walking and has to use a walker or will fall due to problems with her hip." (Tr. at 26.) The RFC includes that limitation, as set out above, and that determination is supported by substantial evidence. There is nothing in the record that would indicate that Plaintiff requires use of an assistive device while she is simply standing. Therefore, substantial evidence supports the ALJ's finding that Plaintiff requires an assistive device only when ambulating.

B. Treating Physician Opinions

Plaintiff also challenges the ALJ's failure to assign controlling weight to Dr. Jones' medical opinions in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c), better known as the "treating physician rule." This rule generally requires an ALJ to give controlling weight

7

to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c) and 416.927(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6) and 416.927(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific

8

to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").[4]

In the present case, Dr. Jones completed a four-page, check-box Medical Source Statement on October 2, 2014. The form essentially asked Dr. Jones to perform an RFC assessment of Plaintiff and therefore included sections for evaluating Plaintiff's exertional, postural, manipulative, visual/communicative, and environmental limitations. (Tr. at 465-68.) Dr. Jones indicated, by checkmark, that Plaintiff could lift less than 10 pounds in the course of an 8-hour workday. (Tr. at 465.) He further opined that Plaintiff could walk for less than 2 hours in an 8-hour workday, "must periodically alternate sitting and standing to relieve pain or discomfort," and is limited in pushing and pulling with her lower extremities. When asked to provide medical findings in support of these limitations, Dr. Jones cited Plaintiff's "facet arthrosis at L4-5 with instability." (Tr. at 466.) Dr. Jones next opined that Plaintiff could only occasionally climb ramps and stairs, balance, kneel, crawl, and stoop as a result of the chronic back pain she continues to experience after her lumbar spinal fusion. (Id.)

In terms of manipulative limitations, Dr. Jones posited that Plaintiff could perform occasional handling and reaching and frequent fingering and feeling. Notably, when then asked to "[d]escribe how the activities checked 'limited' are impaired and the basis of additional manipulative limitations," Dr. Jones wrote that "constant reaching overhead can put strain on

---

[4] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

9

the back and aggravate her symptoms." (Tr. at 467.) He described no further reaching limitations or the basis for any handling limitations. (Id.) The only further restriction included in his assessment was limited vibration, as "vibration can aggravate [Plaintiff's] symptoms." (Tr. at 467-68.)

In weighing Dr. Jones' opinion, the ALJ first recounted Dr. Jones' proposed limitations in detail (Tr. at 28), and then found as follows:

> [T]he opinion of Dr. Jones is not totally supported by his own medical documentation or his trained observations. Dr. Jones opined [Plaintiff] can lift and/or carry less than 10 pounds frequently or occasionally and this is in contrast to [Plaintiff's] reports and testimony at the hearing that she is able to lift more. As a result[,] the undersigned has afforded some but not controlling weight to this opinion. Nevertheless, my RFC as provided is generally consistent with the less than sedentary functional limitations as detailed by [Dr.] Jones and which is generally supported by the overall record. His opinion is given great weight.

(Tr. at 28.)

In arguing that the ALJ erred in giving great, rather than controlling, weight to Dr. Jones' opinion, Plaintiff argues that "the limitations given by Dr. Jones would preclude work." (Pl.'s Br. at 9.) It appears from reading Plaintiff's argument as a whole that she challenges the ALJ's failure to include the reaching and handling restrictions opined by Dr. Jones. Plaintiff contends that these reaching and handling restrictions would support a finding of disability because "[t]he vocational expert testified that a limitation to only occasional handling would eliminate competitive employment." (Pl.'s Br. at 8, 10 (citing Tr. at 68).) As set out briefly above, when asked whether Plaintiff's manipulative functions were affected by her impairments, Dr. Jones checked "limited" next to both "[r]eaching all directions (including overhead)" and "[h]andling (gross manipulation)." (Tr. at 467.) When then asked to further

10

categorize any manipulative functions described as "limited" in terms of frequency, Dr. Jones checked "occasionally" next to "reaching" and "handling." Notably, he also checked "frequently" next to "fingering" and "feeling," despite having previously indicated that Plaintiff had no limitations in those areas. (Id.) Moreover, as previously noted, Dr. Jones only provided the requested explanation for his opinion regarding Plaintiff's ability to reach overhead, stating that "constant reaching overhead can put strain on the back and aggravate her symptoms." (Tr. at 467.) He failed to provide any basis for further reaching or handling limitations, and none is apparent from the record. The ALJ specifically cited these omissions as the basis for according less-than-controlling weight to Dr. Jones' opinion, noting that certain opined limitations were "not totally supported by his own medical documentation or his trained observations." (Tr. at 28.) In addition, Plaintiff herself never alleged reaching, handling, or any other upper body limitations, nor did any other providers indicate that such restrictions were necessary. However, construing Plaintiff's complaints liberally, and giving great weight generally to Dr. Jones' opinion, the ALJ concluded that Plaintiff "could only occasionally reach overhead[,] could frequently reach in all other directions[,] and [could] frequently handle, finger[,] and feel." (Tr. at 25, 28, 30.) Overall, substantial evidence supports the handling and reaching restrictions set out in the RFC.

C. Symptom Evaluation

Plaintiff next challenges the ALJ's finding that her testimony regarding the intensity, persistence, and limiting effects of her symptoms was not entirely consistent with the evidence. Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence,

and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p; see also 20 C.F.R. § 416.929.[5] In Craig v. Chater, the Fourth Circuit addressed the two-part test for evaluating a claimant's statements about symptoms. 76 F.3d at 594-95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 416.929(b)); see also 20 C.F.R. § 416.929(b). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 596.

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 416.929(c)(3):

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

---

[5] The ALJ's decision is dated February 6, 2017, and the Court therefore considers SSR 16-3p, effective March 28, 2016. See SSR 16-3p n.27 ("Our adjudicators will apply this ruling when we make determinations and decisions on or after March 28, 2016. When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review.").

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

In the present case, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 27.) Therefore, Plaintiff's challenge hinges on step two of the Craig analysis.

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." Lewis, 858 F.3d at 866. However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic

13

work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work" and "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also SSR 16-3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities."). According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work related activities . . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities.

SSR 16-3p.

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence and other evidence and

14

explained that determination in his decision. According to Plaintiff, the ALJ failed to adequately incorporate limitations based on the following subjective complaints when assessing Plaintiff's RFC or, in the alternative, explain his basis for omitting them:

- Sitting for long periods of time causes Plaintiff's left leg to go numb and results in pain shooting down her lower back into her left leg. This pain requires her to lie down. (Pl.'s Br. at 11 (citing Tr. at 52-59).)
- Pain medication is ineffective and makes her dizzy. (Id.)
- Plaintiff requires a walker beside her to help her stand when she gets out of bed. (Id.)
- Plaintiff requires her daughter's help with personal care. (Id.)
- Plaintiff is unable to stoop due to pain. (Id.)

However, the ALJ did consider these subjective complaints and the evidence in the record in making the determination. With respect to Plaintiff's complaint of pain while sitting, the ALJ noted Plaintiff's complaints (Tr. at 26), and the ALJ accounted for Plaintiff's inability to sit for long periods of time by allowing her a sit/stand option at will, which the ALJ noted was consistent with the limitations proposed by Plaintiff's treating physician, Dr. Jones. (Tr. at 24, 26, 28, 466.) Plaintiff's testimony regarding her need for an assistive device was also considered and addressed by the ALJ, as discussed in detail above. (Tr. at 26, 58.)

Plaintiff also contends that her daughter "helps her get a bath and with personal care" (Pl.'s Br. at 11), but she points to no evidence supporting this assertion, and none is apparent in her Disability Reports, her reports to her physicians, or elsewhere in the record. Indeed, the treatment records reflect that she described having normal function while bathing,

toileting, and managing personal care. (Tr. at 516, 519, 522, 525.) Moreover, it is unclear how this allegation would require any additional limitations beyond those already included in the RFC, or how this allegation would otherwise render the ALJ's decision unsupported by substantial evidence.

With respect to Plaintiff's contentions regarding the ineffectiveness of her pain medication, the ALJ noted Plaintiff's testimony that the medications "only ease the pain, not get rid of it." (Tr. at 26, 57.) The ALJ also considered the treatment records, which reflect times during which Plaintiff's medications failed to provide relief, particularly leading up to her surgeries, as well as times when she "did get some relief from the narcotic pain medication." (Tr. at 27, 445, 469, 477, 531-33.) The ALJ then took these complaints, along with the opinions of Plaintiff's treating physician and the consultative examiners, into account, and set a very limited RFC in light of the symptoms and evidence in the record. Similarly, with respect to Plaintiff's testimony that her medication "makes her dizzy when [she] first take[s] it every morning" (Tr. at 53), this side effect is not otherwise reflected anywhere in the medical record, and in any event the ALJ included in the RFC a limitation to never climbing ladders, ropes or scaffolds, and having "no concentrated exposure to workplace hazards." (Tr. at 25.) Plaintiff has not pointed to any additional limitations that the ALJ failed to include or that were required in light of her alleged dizziness in the morning when she first takes her medication.

Finally, Plaintiff alleges that she is unable to do any stooping. (Tr. at 59.) However, this contention also fails to find support in the record. As discussed above, Dr. Jones offered by far the most restrictive limitations opined by any source and found that Plaintiff could

16

perform all postural activities, including stooping, on an occasional basis, despite her chronic back pain. (Tr. at 28, 466.) Similarly, Dr. William L. Bell, the consultative examiner, noted Plaintiff's reports that she was unable to bend or twist but ultimately concluded, following a physical exam of Plaintiff, that she was unable to perform "repetitive stooping" due to her low back pain. (Tr. at 28, 393.) The ALJ accorded these opinions "great" and "significant" weight, respectively, in concluding that Plaintiff could stoop only occasionally.[6] (Tr. at 24, 28.)

Thus, the ALJ considered Plaintiff's testimony and the opinions of her treating physician and the consultative examiner, and concluded that Plaintiff's "statements concerning her impairments and their impact on her ability to work are not entirely consistent in light of discrepancies between [Plaintiff's] assertions and information contained in the documentary reports and the reports of the treating and examining practitioners." (Tr. at 29.) The ALJ went on to note that although he "does not find [Plaintiff] at all times symptom free, the evidence does not support the degree of limitation [Plaintiff] alleges at all times since her alleged onset date." (Id.) The ALJ found Plaintiff capable of a very limited subset of sedentary work in light of her impairments, taking into account the "recommended limitations of the consultative and review physicians" and according Plaintiff "every reasonable benefit of the doubt." (Id.) Having considered the ALJ's decision and the record in this case, the Court concludes that substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints.

---

[6] Notably, none of the jobs identified by the vocational expert at step five of the analysis involve stooping, even occasionally, indicating that any error on this point is harmless. See DOT 713.687-018, 1991 WL 679271; DOT 713.684-038, 1991 WL 679267; and DOT 669.684-014, 1991 WL 686074. However, to the extent that occasional stooping is suggested by the vocational expert's further testimony that Plaintiff may need to bend forward if she chose (but was not required) to perform work tasks while standing (Tr. at 67), the ALJ sufficiently explained the basis for this limitation in the RFC.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 13th day of February, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge